IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

PAMELA KIETZMAN,

          Plaintiff,

vs.                                                    Case No. 09-4100-SAC

MACY'S RETAIL HOLDINGS, INC.
and MACY'S CENTRAL - KANSAS
CITY DISTRICT,

          Defendants.

MEMORANDUM AND ORDER

This employment discrimination case comes before the court on the defendants' motion to compel arbitration and dismiss the action, or alternatively, stay the action pending arbitration. The issue before the court is whether the parties entered into a binding and valid arbitration agreement.

**Facts**

In 2003, Macy's, Inc., parent of Macy's Retail Holdings, Inc., developed and implemented an internal dispute resolution program called Solutions InSTORE ("the SIS Program"). The scope of the matters subject to arbitration under the SIS Program is broad, and encompasses the claims made by the plaintiff in this case. By accepting employment with Macy's, all employees agree to be covered by all four steps of the SIS Program, ranging from Step 1 (informal grievance) through Step 4 (arbitration before the AAA). Employees can opt out of Step 4 only by completing a one-page election form and mailing it back to the address listed on the form within 30 days of their date of hire.

Employees are usually made aware of the SIS Program details, including their ability to opt-out of Step 4, arbitration, in the following ways: (1) the SIS Program New Hire Brochure; (2) that brochure's attached opt-out Election Form; (3) the SIS Program Acknowledgment Form; (4) an in-person briefing about the SIS Program during New Hire Training; (5) a video about the SIS Program, shown during New Hire Training; and (6) SIS Program posters displayed in the Employee Service Area.

Plaintiff was hired on or about September 16, 2008, as a seasonal Support Associate at the West Ridge Macy's located in Topeka, Kansas, but did not mail a form opting out of Step 4 of the Program until December of 2008. The plaintiff attended New Hire Training on September 16, 2008, administered by Brenda Immenschuh. The plaintiff was late to that training, and her instructor, who was distracted by a telephone call during part of the training, did not return to any topic covered before the plaintiff entered the room.[1]

During training, employees complete their New Hire paperwork either on-line or in paper form. The plaintiff chose to complete hers on-line. That paperwork included a Direct Deposit form, a W-4 Withholding Allowance Certificate, an Associate Discount form, an I-9 Employment Eligibility form, a United Way Paycheck Contribution form, and other forms. The plaintiff does not dispute that she entered her electronic signature on eight such documents. Defendants assert and the plaintiff denies that she also signed an electronic acknowledgment form during her New Hire Training confirming her receipt

---

[1]The record does not reflect how late the plaintiff was to this training, the length of the distracting telephone call, or whether any topics were actually covered during the plaintiff's absence.

of information about the SIS Program. See Electronic Acknowledgment, attached as Exhibit "D" to Noeth Aff.

Defendants additionally assert and the plaintiff denies that she was given an SIS Program New Hire Brochure (the Brochure) at her New Hire Training. The Brochure contains an overview of the SIS Program, explains each step of the SIS Program in detail, and states that arbitration is an option rather than a requirement. The Brochure, which devotes three pages to the Step 4 arbitration, unambiguously explains the employee's right to opt out of this Step by submitting an election form within 30 days of his or her date of hire. Ex. A, pp. 7-8. The Brochure makes clear that the arbitration process is binding, that it covers any dispute related to the employee's employment, and that it effects a waiver of the employee's right to a civil action and jury trial. Ex. A, p. 7.

The SIS Program Brochure also contained an Early Dispute Resolution Program Election Form which states that an employee must take action within 30 days of her date of hire if she wishes to opt out of Step 4; otherwise she will be covered by all four steps of the SIS Program. (Ex. C) The opt-out language is clear and conspicuous, often using bold and/or capital letters. (Id.) In addition, the Election Form clearly states where to mail the form in order to opt out of arbitration. (Id.)

In this case, the plaintiff alleges that during her employment with defendants, her direct supervisor sexually harassed her. She reported his acts to defendants' local management and called store support in December of 2008. In her declaration under penalty of perjury, the plaintiff states that she had no notice of the SIS Program until late December of 2008, when she first received a copy of the SIS Program booklet after having contacted local management regarding the harassment. She further avers that

she did not sign the SIS Program Acknowledgment form either in paper form or on-line. The plaintiff was terminated effective February 19, 2009, and thereafter brought this suit alleging violations of Title VII and various pendent claims. Defendants seek to dismiss the action and compel arbitration, or, in the alternative, stay the action pending resolution of the arbitration, in accordance with the plaintiff's failure to opt out of the SIS Program.

**Arbitrability standard**

Under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.* , "[a] written provision in any ... contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction ... shall be valid, irrevocable, and enforceable...." 9 U. S .C. § 2. Section 3 of the FAA permits the Court to stay litigation in favor of arbitration. Federal policy favors arbitration agreements and requires that the Court rigorously enforce them. *Shearson/Am. Exp., Inc. v. McMahon*, 482 U.S. 220, 226 (1987) (citing *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985)). Arbitration is a matter of contract between the parties in which courts have a limited role. *Shell Oil v. CO2 Committee, Inc.*, __ F.3d __ (10th Cir. Dec. 21, 2009). On a motion to compel arbitration under the FAA, the Court generally applies a strong presumption in favor of arbitration, *ARW Exploration Corp. v. Aguirre*, 45 F.3d 1455, 1462 (10th Cir.1995), but where, as here, the parties dispute whether a valid and enforceable arbitration agreement exists, that presumption is non-existent. *Riley Mfg. Co. v. Anchor Glass Container Corp.*, 157 F.3d 775, 779 (10th Cir.1998).

The FAA generally applies to employment contracts, as arbitration agreements do not contravene the policies of federal statutes which give employees specific

4

protection against discrimination. *See Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 119, 122-23 (2001). "By agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985). Thus the plaintiff can be required to arbitrate federal claims for employment discrimination if she has contracted to do so. *See Armijo v. Prudential Ins. Co. of America,* 72 F.3d 793, 797 (10th Cir.1995) (citing *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 35 (1991)).

The question whether the parties agreed to arbitrate a dispute is an issue for judicial determination unless the parties clearly and unmistakably provide otherwise. *AT & T Technologies, Inc. v. Communication Workers of Am.*, 475 U.S. 643, 649 (1986). In the present case, the parties have not shown any evidence that they intended for the arbitrators to decide the question whether the dispute is arbitrable. Accordingly, the question of arbitrability is an issue for this court.

A party can be made to arbitrate only those disputes which she has agreed to submit to arbitration. *AT & T Techs.*, 475 U.S. at 648; *see also Avedon Eng'g., Inc. v. Seatex*,126 F.3d 1279, 1283 (10th Cir.1997). "A court may compel arbitration of a particular dispute ... only when satisfied that the 'making' of the agreement to arbitrate is not at issue." *National American Ins. Co. v. SCOR Reinsurance Co.*, 362 F.3d 1288, 1290 (10th Cir. 2004) quoting *Spahr v. Secco,* 330 F.3d 1266, 1270 (10th Cir. 2003). In determining whether a dispute is arbitrable, the court uses a burden-shifting framework similar to that used in deciding summary judgment motions.

> A defendant bears the initial burden of showing that an arbitration agreement is valid. *SmartText Corp. v. Interland, Inc.* ., 296 F.Supp.2d 1257, 1262-63 (D.Kan.2003) (citations omitted); *Phox v. Atriums Mgmt. Co.*, 230 F.Supp.2d 1279, 1282 (D.Kan.2002). Once the defendant has met this burden, the plaintiff must show that a genuine issue of fact remains about the agreement. *SmartText Corp.*, 296 F.Supp.2d at 1263; *Phox*, 230 F.Supp.2d at 1282. "Just as in summary judgment proceedings, a party cannot avoid ... arbitration by generally denying the facts upon which the right to arbitration rests...." *Tinder v. Pinkerton Sec.*, 305 F.3d 728, 735 (7th Cir.2002).

*Hildebrand v. Par Network, Inc.*, 2009 WL 4508578, 1 -2 (D.Kan. 2009). To demonstrate a genuine issue of material fact as to the making of the agreement to arbitrate, the facts "must be identified by reference to an affidavit, a deposition transcript, or a specific exhibit incorporated therein." *Adams v. Am. Guar. & Liab. Ins. Co.*, 233 F.3d 1242, 1246 (10th Cir. 2000). In deciding whether the non-movant has identified a genuine issue of material fact for trial, "the evidence of the non-movant is to be believed and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Nonetheless, allegations which are legal conclusions, bare assertions, or merely conclusory are not entitled to the assumption of truth. *See Ashcroft v. Iqbal*, --- U.S. ----, 129 S.Ct. 1937, 1949 (2009). If the plaintiff demonstrates a genuine issue of material fact, then a trial on this issue is required. *Avedon Eng'g*, 126 F.3d at 1283; 9 U.S.C. § 4. However, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (citations omitted).

**Analysis**

Generally, state law principles of contract formation govern the determination whether a valid arbitration agreement exists. *Hardin v. First Cash Fin. Servs., Inc.*, 465 F.3d 470, 475 (10th Cir.2006). The court thus looks to Kansas' choice of law rules

regarding contracts. No claim is made that the agreements containing the arbitration clauses contain a choice of law clause, or that the parties otherwise made an effective choice of law. Kansas courts generally apply the Restatement (First) of Conflict of Laws § 332 (1934), and the doctrine of lex loci contractus, thus the law of the state where the contract is made governs. *In re K.M.H.*, 285 Kan. 53, 60 (2007), *cert. denied*, 129 S.Ct. 36 (2008). Under Kansas law, a contract is made where the last act necessary for its formation occurs. *Id*. Here, the offer, acceptance, and consideration all occurred in Kansas, and no party has shown that any law other than that of the States of Kansas should apply. *See id.*, at 61 (noting default to law of forum state in contract disputes). Accordingly, the court applies the substantive law of the state of Kansas to determine whether the parties entered into a valid agreement to arbitrate. Under Kansas law, the question whether the parties have created a binding contract depends on their intent and is a question of fact. *Reimer v. Waldinger Corp.*, 265 Kan. 212, 214 (1998). In order for parties to form a binding contract, there must be a meeting of the minds as to all essential terms. *Sidwell Oil & Gas Co. v. Loyd*, 230 Kan. 77, 79 (1981).

To meet their burden to show evidence of an enforceable arbitration agreement, defendants show the court the following copies of relevant documents: 1) the SIS Program brochure given to new employees during their New Hire Training, which states that employees agree to arbitrate their disputed under the stated rules of arbitration unless they opt out within 30 days; 2) a record of electronic signatures for new hires showing that the plaintiff electronically signed nine separate forms on September 16, 2008, one of which is the SIS Program acknowledgment; 3) an affidavit from Robert Noeth, Vice President of Employee Relations, SIS Program, for the parent company to

7

defendant Macy's Retail Holdings, Inc., who states that an employee must enter his or her own social security number to electronically sign a document; 4) an affidavit from Peggy Allen, the Human Resources Manager responsible for the policies at the store at which plaintiff worked, who states that in addition to receiving the New Hire paperwork, newly hired employees are also shown a SIS Program videotape which explains the program and informs employees that they may opt out of Step 4 arbitration, and can see SIS Program posters displayed in the employee service area; and 5) the SIS Program New Hire Acknowledgment.

> The New Hire Acknowledgment form for the SIS Program states:
>
> I have received a copy of the Solutions InSTORE brochure and Plan Document and acknowledge that I have been instructed to review this material carefully. I understand that I have 30 days from my date of hire to review this information and postmark my form to the Office of Solutions InSTORE if I wish to exclude myself from coverage under Step 4 of the program, Arbitration. ...
> I understand that I am covered by and have agreed to use all 4 steps of Solutions InSTORE automatically by my taking or continuing a job in any part of Macy's, Inc. ... I understand that if I do not wish to be covered by Step 4, Arbitration, the only way to notify the Company about my choice is by postmarking my election form within 30 days of hire and mailing it to the Office of Solutions InSTORE.

Allen Aff. ¶ 11; Ex. C; Noeth Aff. at ¶ 24; Ex. D. This evidence tends to show that the plaintiff electronically executed the SIS Program form, which acknowledged that she was informed about the SIS Program during her New Hire Training, and clearly informed her that she had to opt out of arbitration within thirty days or be bound by arbitration, satisfying the defendants' obligation under the first step of the burden-shifting framework.

In response, the plaintiff states through her declaration that she did not sign the acknowledgment or receive the SIS Program brochure or learn about the SIS Program

8

during her New Hire Training. She contends that evidence of the store's policy of what is usually done is insufficient to rebut her denial that it was done in her particular instance. She further contends that defendants have failed to show the efficacy of the security procedures they used applied, as necessary to show that she was in fact the person to whom the electronic signature was attributable.

Under Kansas law, an electronic signature can be legally recognized and attributed to plaintiff as her own act if circumstantial evidence is shown, "including a showing of the efficacy of any security procedure applied to determine the person to which the ... electronic signature was attributable," K.S.A. § 16-1609(a). *See* K.S.A. § 16-1607(a). In the present case, defendants initially offer only the affidavit of Mr. Noeth, which establishes that to electronically sign defendant's documents, an employee must enter his or her own social security number.

Even assuming, without deciding, that this evidence is insufficient to establish the validity or authenticity of the plaintiff's electronic signature, the court finds that the documents attached to defendants' reply brief fully rebut any inference of invalidity or lack of authenticity.

Defendants first offer the affidavit of Brenda Immenschuh, who personally administered the New Hire Training to the plaintiff. She states that the plaintiff completed the SIS Program Acknowledgment as part of her New Hire paperwork. She additionally suggests that she gave the plaintiff the Program Brochure, stating:

> At this training, Macy's associates, including [the plaintiff] are given a copy of the Solutions InSTORE EarlyDispute Resolution Brochure. This brochure explains the program and also informs employees that they have the choice to opt out of the Step 4 arbitration by completing the Election Form that is enclosed within the brochure.

9

Dk. 11, affidavit of Immenschuh.[2] Although the affidavit fails to include any specific recollection about the plaintiff's actual receipt of the Brochure, the affidavit is helpful in establishing the defendant's standard procedure. Additionally, it notes the safeguards taken to secure the defendants' employment records, stating:

> I am responsible for maintaining and safeguarding the employment records of current and former associates of [the store], including [the plaintiff's] records. Those files are kept in my office under lock and key. The only people that have access and a key to the personnel file cabinet are Peggy Allen...and myself. In addition, the door to my office is always locked when I leave. No one else had access to [the plaintiff's] personnel records.

*Id.*

Defendants additionally present unrebutted evidence that defendants used a security procedure by which employees could confidentially and securely execute the acknowledgment and other forms through the workplace computer system. Specifically, defendants present the affidavit of Laura Webb, defendant's Manager of Macy's Systems and Technology, whose job duties include managing the online forms that all new associates are required to complete and/or acknowledge before being hired by Macy's. Ms. Webb states:

> [t]o access the online forms, the employee must enter her social security number, date of birth and Zip Code in the appropriate fields on the Online forms Login screen, and then click submit... The next screen that the associate will see is the Online Forms Main Menu which lists all of the forms that the associate is

---

[2] Ms. Immenschuh additionally contends that she personally reviewed with the plaintiff the Macy's Associate Handbook, which explains the Program. In lieu of a specific citation to the record, however, only a general reference to the Handbook is made. The Handbook is approximately 45 pages long, its index does not reference the SIS Program, and the only reference to the SIS Program located by the Court is not only short, but so dark as to be illegible. Accordingly, the court gives no weight to this assertion. The Court additionally notes that it gives no weight to the original declaration of Andrea Stallworth because its print is too light to be legible.

10

required to complete for employment. Included among those forms is the Solutions InStore New Hire Acknowledgment.... Once the associate clicks the "Fill in Form" link next to the Solutions InStore New Hire Acknowledgment, the next screen that the associate will see is the Solutions InStore New Hire Acknowledgment form.... By clicking on the "I Certify" link at the bottom of the page, the associate certifies, among other things, that: "I understand that I have 30 days from my date of hire to review the information and postmark the form to the office of Solutions InStore if I wish to exclude myself from coverage under Step 4 of the Program, Arbitration." The associate also certifies that additional information about Solutions InStore is available from [a stated website.]

      Once the associate clicks the "I Certify" link at the bottom of the page, a dialogue box appears requesting that the associate electronically sign the Solutions InStore New Hire Acknowledgment form. In order to electronically sign, the associate must enter her social security number, date of birth and ZIP code in the appropriate fields and then click the "Continue" link in the electronic signature dialogue box.... The information entered in the fields of the electronic signature dialogue box is then compared against the user's session values (*i.e.*, the information entered to Login) to make sure that social security numbers match. If the social securities do not match, the user is prompted to reenter his/her personal information. After 5 invalid attempts, the account is locked and the session is terminated. If the social security numbers do match, the database is then queried to ensure that the date of birth and ZIP code also match. If they do match, the application saves these fields along with all the other form fields to a database record in an XML format. ...

      Once the application saves the electronic signature, a dialogue box will appear stating: "Your changes have been saved successfully." This means that the associate's electronic signature data was successfully saved to the database.... In addition, the status of the Solutions InStore New Hire Acknowledgment form on the Online Forms Main Menu is updated to "Complete."
...

      Only a select few Online Form Administrators have access to the electronic signature database. Individual electronic signatures are accessed only when that information becomes relevant to handling an employee's claim.

      I accessed the electronic signature database to determine whether [the plaintiff] electronically signed the Solutions InStore New Hire Acknowledgment form... Attached [is an Exhibit showing] that [the plaintiff] electronically signed the Solutions InStore New Hire Acknowledgment form on the 16th of September 2008 at 2:15:54 p.m.

Dk. 11, Corrected Declaration of Webb. Ms. Webb also states that the plaintiff

additionally electronically signed eight other listed forms in succession between 2:12

p.m. and 2:19 p.m. According to the time stamps, the plaintiff electronically signed the

Solutions InStore New Hire Acknowledgment between the completion of her form W-4 Employee Withholdings Certificate and the completion of her United Way Pledge. Ms. Webb's affidavit provides a clear and convincing showing of the efficacy of the security procedures used by defendants to assure that the electronic signature which appears on the relevant documents was in fact made by the person whose signature is represented.

In light of the facts of record, plaintiff's conclusory denial that she signed the SIS Program Acknowledgment Form carries little weight. Plaintiff tacitly concedes that she electronically signed eight other documents during her New Hire Training. The record shows that some of those documents were electronically signed immediately before and some were signed immediately after her electronic signature was entered on the Program Acknowledgment Form. Each of the nine forms was signed in rapid succession. Given the amount of the material presented to the plaintiff underlying the nine forms she signed, and the fact that the plaintiff electronically signed all such documents in seven minutes, it is not unreasonable to believe that the plaintiff has no recollection of the SIS Program or its acknowledgment form. The record suggests no reason why it would be reasonable to believe that someone other than the plaintiff entered her electronic signature on the SIS Program Acknowledgment Form or how her electronic signature would appear on there if she did not put it there.

Having reviewed the entire record, the court finds that the evidence fails to raise a genuine issue of material fact whether plaintiff actually executed the electronic signature which appears on the SIS Program Acknowledgment Form. *See Avedon Eng'g.*, 126 F.3d at 1283. Accordingly, by terms of the SIS Program Acknowledgment

Form signed by the plaintiff, she received a copy of the SIS Program Brochure, she was instructed to review the SIS Program material carefully, and she understood that she had 30 days from her date of hire to opt out of arbitration. The plaintiff's failure to postmark her opt out form within 30 days of her hire date binds her to arbitrate her employment disputes with the defendants. The court finds it unnecessary to reach the issue whether the plaintiff, by continuing her employment with knowledge of the arbitration agreement, demonstrated an intent to be bound by the agreement even absent her signature.

**Breach**

Plaintiff additionally contends that even if an agreement to arbitrate exists, the agreement was materially breached and thus voided by defendants' failure to perform their duty to follow the steps prescribed by their the SIS Program. Specifically, plaintiff asserts that when she initiated step two of the SISProgram by complaining of the actions of Brett Dittmer, her direct supervisor, she received "no response," so she initiated step three and "still received no response," despite repeated calls and continual checking of the employee website. Dk. 8, p. 5.[3]

Even assuming, without deciding, that such inaction could be sufficient grounds for a breach, the record fails to support the plaintiff's assertions. The above factual assertions not only are unsupported by any citation to the record, but also are squarely

---

[3]Step 2 is Senior Management Review, where the employee submits a written complaint for investigation by a senior human resources executive not involved in the underlying decision. Step 3 is Review by Peer Panel or Office of SIS, where the employee submits a written Request for Reconsideration and the grievance involves legally protected rights.

contradicted by it. Plaintiff's own exhibit reflects that on January 21, 2009, the plaintiff called defendant's employee and provided the following information:

> ...On December 31, Darla (last name unknown) contacted [the plaintiff] to inform her that she completed the investigation of Bret and found Bret guilty. Darla told [the plaintiff] the action taken to reprimand Bret was confidential, and Darla was unable to disclose the information to [the plaintiff].

Dk. 8, Exh. C, p. 2. Plaintiff thus acknowledges that the defendant investigated the matter and found in her favor. Plaintiff's claim of breach of contract based upon defendants' alleged inaction is thus meritless.

**Revocation**

Plaintiff lastly contends that a Kansas statute makes this arbitration agreement voidable at the will of either party, and that the plaintiff, by filing this case, effectively voided the arbitration agreement. This argument finds some support in Kansas law.

The referenced Kansas statute exempts all "contracts between an employer and employees" and all tort claims from the provisions of the Kansas Uniform Arbitration Act. K.S.A. 5-401(c). Plaintiff relies on cases holding that arbitration clauses contained in employment contracts are governed by the common law, and that under the common law, either party may revoke the arbitration agreement at any time prior to the making of an award. *City of Beverly v. White, Hamele & Hunsley,* 224 Kan. 386, 389, 580 P.2d 1321 (1978). Revocation can be implied from one party's filing of an action for damages. *Thompson v. Phillips Pipe Line Co.*, 200 Kan. 669, 675, 438 P.2d 146 (1968).

Even assuming, *arguendo*, that the present claims would fall within the scope of the Kansas statutory exemption for employment contracts or torts, the FAA preempts conflicting state laws which exempt enforcement of arbitration agreements involving

interstate commerce. *See Hill v. Ricoh Americas Corp.*, 634 F.Supp.2d 1247 (D.Kan. 2009) (Kansas law does not prohibit enforcement of an arbitration clause in an employment agreement because of FAA preemption); *Skewes v. Shearson Lehman Bros.*, 250 Kan. 574, 584, 829 P.2d 874, 881 (1992) (Congress intended to foreclose state legislative attempts to undercut enforceability of arbitration agreements); *Biomat, Inc. v. Sampson*, 28 Kan.App.2d 242, 244, 15 P.3d 846, 848 (Kan.Ct.App. 2000) (contracts involving commerce with an arbitration clause are enforceable under broad interpretation of FAA, notwithstanding provisions of K.S.A. § 5-401(c), which prohibit arbitration of employment and tort claims). The cited statute is preempted by the FAA. *See Lewis v. Circuit City Stores, Inc.*, 500 F.3d 1140, 1151 (10th Cir. 2007). Accordingly, no revocation of the arbitration agreement has been shown. Based on the foregoing, the court finds the arbitration agreement enforceable and that plaintiff's claims should be referred to arbitration.

**Remedy**

The only remaining issue is whether the case should be stayed or dismissed. Section 3 of the FAA requires the court to stay litigation when claims are properly referable to arbitration "until such arbitration has been had in accordance with the terms of the agreement," 9 U.S.C. § 3, but does not provide for dismissal of the case. The Supreme Court has held that the FAA does not oust the district court's jurisdiction over claims subject to arbitration. *The Anaconda v. Am. Sugar Refining Co.*, 322 U.S. 42, 44 (1944). The Tenth Circuit has interpreted this to mean that section 3 of the FAA contemplates continuing supervision by the district court. *Meyer v. Dans un Jardin, S.A.*, 816 F.2d 533, 538-39 (10th Cir.1987). Thus, the court would ordinarily stay the case

pending arbitration, rather than dismiss it.

Here, however, the arbitration agreement expressly provides that this case should be dismissed, stating:

> If a party files a lawsuit in court to resolve claims subject to arbitration, both agree that the court shall dismiss the lawsuit and require the claim to be resolved through the Solutions InSTORE program.
> If a party files a lawsuit in court to resolve claims that are, and other claims that are not, subject to arbitration under Step 4, such party shall request the court to stay litigation of the nonarbitrable claims and require that arbitration take place with respect to those claims subject to arbitration, assuming the earlier steps have been exhausted.

Dk. 5, Ex. A, p. 26 of 74. The agreement thus evidences the parties' knowledge of the possible remedies (stays and dismissals) and intentionally distinguishes between the two.

This contractual provision is consistent with the rule of law that "[w]hen all of the issues raised in a litigation lie within the scope of an arbitration agreement, courts have the discretion to dismiss the action rather than issue an order directing a stay." *Sea Spray Holdings, Ltd. v. Pali Fin. Group. Inc.*, 269 F.Supp.2d 356, 366 (S.D.N.Y. 2003). *See Bercovitch v. Baldwin School, Inc.*, 133 F.3d 141, 156 n. 21 (1st Cir.1998). Neither party contends, nor does it appear, that any claim made by the plaintiff in this lawsuit lies outside the scope of arbitration.

Staying a case is generally preferable because, unlike a dismissal, a stay is not appealable as a final order and therefore can promote the policy of avoiding needless delay of the arbitration because of the time required for appellate review. *See Armijo v. Prudential Ins. Co. of America,* 72 F.3d 793, 797 (10th Cir.1995). Weighing against the desirability of granting a stay is the competing policy in this case of upholding the

agreement made by the parties. The Tenth Circuit, in a case recently decided, teaches that where a provision of an arbitration agreement is unambiguous, it should be honored, even at the expense of judicial efficiency. *See Shell Oil v. CO2 Committee, Inc.*, __ F.3d __ (10th Cir. Dec. 21, 2009). There, instead of permitting the parties to select the panel members as the agreement provided, the district court referred the issue of res judicata to the same panel of arbitrators who had previously decided the substantive issue. In finding this to be error, the Tenth Circuit found: "Notwithstanding the potential efficiency benefits of having the original panel determine the precise scope of its own prior order, the district court's authority to designate arbitrators was limited by 9 U.S.C. § 5 and the parties' panel selection provision." The Tenth Circuit stressed the court's limited role in such matters:

> Accordingly, "arbitration is a matter of contract" in which courts have a limited role. *Id.* In that limited role, courts do not have authority to decide questions explicitly addressed by the arbitration agreement. *Id.* Rather, courts are bound by the terms of the agreement and may only decide questions of arbitrability—that is, whether the parties have agreed to submit a specific dispute to arbitration—"in the kind of narrow circumstance where contracting parties would likely have expected a court to have decided the gateway matter." *Id.*

Slip op. p. 7. The question whether this case should be dismissed or stayed pending resolution of the arbitration is a matter "explicitly addressed by the arbitration agreement," *id.*, as noted above. The court therefore grants defendant's motion to dismiss the case pursuant to Rule 12(b)(1).

IT IS THEREFORE ORDERED that defendants' Motion to Dismiss and Compel Arbitration (Doc. 4) is granted. IT IS FURTHER ORDERED that the parties shall proceed to arbitration in accordance with the provisions of the arbitration clause.

Dated this 2nd day of February, 2010, Topeka, Kansas.

                                            s/ Sam A. Crow
                                            Sam A. Crow, U.S. District Senior Judge